

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VALDA STEWART,

    PLAINTIFF,

v.                                            CASE NO.: CV-99-J-1383-S

BOOKER T. WASHINGTON
INSURANCE COMPANY and
BOOKER T. WASHINGTON
BROADCASTING SERVICE, INC.,

    DEFENDANTS.

## MEMORANDUM OPINION

Coming on to be heard at the court's motion docket of October 27, 1999 was the defendant Booker T. Washington Broadcasting Service, Inc.'s ("Broadcasting") motion to dismiss (doc. 3), the defendant Booker T. Washington Insurance Company Inc.'s ("Insurance") motion to dismiss (doc. 5), and Insurance's amended motion to dismiss (doc. 12). The plaintiff filed responses to the defendants' motions to dismiss (docs. 7 and 8) and evidentiary submissions (doc. 9). Insurance filed evidentiary submissions in support of its motions (doc. 14). Each party filed a brief in support of its position. The plaintiff filed an opposition to Insurance's amended motion to dismiss (doc. 22) and submitted further evidence (docs. 23 and 24). Insurance filed a response to the plaintiff's opposition (doc. 30). The plaintiff also filed an opposition to supplemental submission of Broadcasting (doc. 27). At the motion

35

hearing, all parties were present by and through their attorneys of record and the court heard oral argument. The court finds that evidence, depositions and affidavits having been submitted in support of and opposition to the motions to dismiss, the court must treat this as a motion for summary judgment under Rule 12(b), Federal Rules of Civil Procedure.[1] Because this court has determined that the pending motions are to be considered as motions for summary judgment, the court most consider all the evidence in the light most favorable to the plaintiff.

The defendants raise several grounds on which they allege their motions are due to be granted:

Both Broadcasting and Insurance allege that the plaintiff's charge of discrimination was filed with the Equal Employment Opportunity Commission more than 180 days after the last date of discrimination and are thus barred as untimely. *See* 42 U.S.C. § 2000e-5(e).

The defendant Insurance alleges that it is not the plaintiff's employer or joint employer for Title VII purposes. The plaintiff alleges that Broadcasting was really a division of Insurance or that the two companies may be considered as a joint

---

[1] The plaintiff filed a motion to continue hearing and permit discovery on August 31, 1999, which this court granted on September 1, 1999. While the plaintiff argues in her opposition to Broadcasting's supplemental motion to dismiss that the defendant's filing of supplemental submissions on October 21, 1999 was the filing which converted the motions to dismiss into motions for summary judgment, and hence, having been filed less than ten days before the date set for hearing, was untimely, the court notes that evidence outside the pleadings was submitted on August 27, 1999 by Insurance (doc. 14) and on August 10, 1999 by the plaintiff in her original responses to the motions (docs. 7, 8 and 9).

2

employer for purposes of Title VII actions. For reasons stated below, the court does not reach this argument.

In her complaint, the plaintiff alleges that she was (1) retaliated against for filing a previous EEOC charge concerning sexual harassment, (2) that she was discriminated against on the basis of her sex when the defendants transferred her and (3) she was discriminated against when the defendants terminated and failed to rehire her. Plaintiff's complaint at ¶¶ 31-35.

## FACTUAL BACKGROUND

In the light most favorable to the plaintiff, the court finds the facts of this case to be as follows:

The plaintiff filed a charge of discrimination with the EEOC on April 24, 1996. Exhibit A to 8/10/99 Affidavit of Valda Stewart. In that charge, naming Broadcasting as her employer, the plaintiff alleged that she was being harassed by her supervisor, Barry Williams and also being discriminated against on the basis of her sex. She further states in that charge "I believe that the employer is making a record to terminate my employment." EEOC charge 4/24/96, submitted as Exhibit 13 to Insurance's "Notice of Filing"; 10/25/99 Affidavit of Valda Stewart at ¶ 2.

On February 13, 1998, the plaintiff filed a second charge of discrimination with the EEOC, naming Insurance as her employer and stating that, since filing the April 24, 1996 EEOC charge, she has been subject to retaliation and discriminated against as shown through a transfer and then her termination. EEOC charge 2/13/98. The

3

plaintiff also states in that charge that in May of 1996, she was transferred from her duties in the "respondent's construction, broadcasting, cemetery, and public relations division to solely the broadcasting division, and was told at the time of her transfer that such action was for the time during which the investigation of her EEOC was pending, and that she would be reinstated to her full duties after such investigation was completed. EEOC charge 2/13/98; 10/25/99 Affidavit of Stewart at ¶ 3.

On July 2, 1997, the plaintiff received a Dismissal and her right to sue letter from the EEOC. 10/25/99 Affidavit of Stewart at ¶ 3. She was not transferred back to her full duties. The plaintiff did not file suit in District Court within 90 days, nor otherwise pursue the allegations of that EEOC charge. On November 21, 1997, Broadcasting was sold and all of the employees were terminated. Plaintiff alleges that other employees were "rehired" by Insurance, but she was not. *See* EEOC charge 2/13/98. The plaintiff filed a third charge of discrimination with the EEOC on June 8, 1998 against Broadcasting, alleging the identical grounds as she had stated in her February, 1998 charge. Exhibit 1 to Broadcasting's motion to dismiss (doc. 3).

The plaintiff became a Certified Public Accountant in 1989. 10/6/99 Affidavit of Stewart at ¶ 1. She was first hired by Insurance as an accountant in 1990. 10/6/99 Affidavit of Stewart at ¶ 2. Approximately nine months later, Kirkwood Balton, the president of Insurance, Broadcasting, and A.G. Gaston Construction Company ("Construction"), told the plaintiff that she would be doing the accounting work for Broadcasting and Construction. 10/6/99 Affidavit of Stewart. Broadcasting and

4

Construction were both subsidiaries of Insurance. Depo. of Balton at 54-55. At Broadcasting, the plaintiff became the Vice President of Accounting and was also an officer of Construction. Exhibit 2 to Insurance's Notice of Filing; 10/6/99 Affidavit of Stewart at ¶ 3. In its submissions to the Federal Communications Commission, Broadcasting represented that it had two parent corporations, Insurance and A.G. Gaston Corporation. *Id.* In the plaintiff's W-2 forms for the years 1993, 1994, 1995, 1996 and 1997, Broadcasting is named as the employer. Exhibit 1 to Insurance's Notice of Filing.

From December 1995 until April 1996, the plaintiff was supervised by Barry Williams. 10/6/99 Affidavit of Stewart. Mr. Williams was the subject of the April, 1996 EEOC charge of sexual harassment. *See* Exhibit A to 8/10/99 Affidavit of Valda Stewart. In that charge, naming Broadcasting as her employer, the plaintiff alleged that she was being harassed by her supervisor, with whom she had previously had a consensual relationship. EEOC charge 4/24/96, submitted as Exhibit 13 to Insurance's "Notice of Filing". In May, 1996, the plaintiff was assigned to solely Broadcasting duties during the pendency of the EEOC investigation. The plaintiff was told she would be reassigned to both Broadcasting and Construction when the investigation was completed. EEOC charge 2/13/98; 10/25/99 Affidavit of Stewart at ¶ 3.

On November 3, 1997, the plaintiff had an exit interview with Broadcasting, which has checked off on the form, under the "Resignation" column, "other

(specify)" and "Company Sold" in handwriting next to the checked box. Exhibit 10 to Insurance's Notice of Filing. The plaintiff signed this form on November 3, 1997. Plaintiff alleges in an affidavit that she had no notice until November 20, 1997 that she was to be terminated. 10/25/99 Affidavit of Stewart at ¶ 5. However, plaintiff does admit that she attended the exit interview on November 3, 1997 and that she was told then that her actual termination date was not yet established.

In deposition, Kirkwood Balton, president of both defendant corporations, testified that after the asset purchase agreement was executed on May 12, 1997, he held a meeting with all the employees of Broadcasting. He stated:

> ... we told them that we had entered into an agreement to sell the radio station and that we were concerned about the employment of all of our people, and we were concerned about the continued operation of the broadcast service until – until it was – the sale brought to closure, and we told all of our employees that we would help them with employment, try to hire them, or if they stayed on with us until the end, until the end of the sale, that we would pay them four months' severance pay.

Depo. of Balton at 230-232. Mr. Balton further stated that all the employees were terminated except for one, Marie Pickett, who was retained to oversee the operations of the A.G. Gaston Gardens. Id. at 233.

On January 8, 1998, the plaintiff sent a cover letter and resume to Insurance, stating that she was interested in working for their company. Exhibit 11 to Insurance's Notice of Filing.

6

## LEGAL ANALYSIS

The plaintiff alleges that the last date of discrimination against her was November 21, 1997, the date she was terminated from her position at Broadcasting. *See* EEOC charge 2/13/98. The defendants both argue that the plaintiff was actually on notice of any alleged discrimination much earlier than that and thus, November 21, 1997 is not the proper date for determination of whether the plaintiff filed her charge of discrimination within the 180 day time frame mandated under 42 U.S.C. § 2000e-5(e)(1). This court finds a multitude of evidence that the plaintiff was on notice long before November 20, 1997 that she was going to be terminated. The facts reveal that plaintiff simply chose to ignore that notice and that she believed, with no justification, that another job would be found for her in another one of the companies related to Insurance.

Irrespective of defendant's arguments that November 21, 1997 is not the proper date for establishing when the plaintiff had to file her EEOC charge to pursue this action, no doubt exists that the plaintiff's June, 1998 EEOC charge, naming Broadcasting as her employer, was untimely as to all alleged discriminatory acts. *See e.g. Burnham v. Amoco Container Co.*, 755 F.2d 893 (11th Cir.1985). The plaintiff alleges that the June 1998 charge, naming Broadcast as her employer, was intended as an amendment to her February 1998 charge naming Insurance as her employer and that the two defendants can be considered as a "joint" employer for purposes of Title

7

VII. Thus, the court shall examine the pending motions against both defendants in light of the February, 1998 charge.

The 180-day time limit to file an EEOC charge is a statute of limitations to filing a lawsuit based on discrimination and the allegations of that charge. 42 U.S.C. § 2005-5(e)(1). The language of that code section is mandatory, stating that a "charge under this section **shall** be filed within one hundred and eighty days after the alleged unlawful employment practice occurred.... (emphasis added)." However, courts have interpreted this language to find that the 180 days is not jurisdictional and is subject to waiver, estoppel and equitable tolling. *Burnham v. Amoco Container Company*, 755 F.2d 893, 894 (11th Cir. 1985) (addressing 180 day charge filing requirement under the ADEA); citing *Zipes v. TransWorld Airlines, Inc.*, 455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 1133 n.11, 71 L.Ed.2d 234 (1982); *Allison v. Western Union Telegraph Co.*, 680 F.2d 1318, 1323 (11th Cir.1982) (EEOC filing requirement under Title VII, like that under ADEA, is not jurisdictional).

However, the plaintiff failed to establish or even raise any equitable considerations which would toll the 180 day requirement of 42 USC § 2000e-5(e)(1).[2]

---

[2] *Cf. Cocke v. Merrill Lynch*, 817 F.2d 155, 1560-61 (11th Cir.1987) ("The district court held as a matter of law that equitable tolling was not justified in this case, because when Cocke received notice of termination he was cognizant of his ADEA rights and was suspicious that he was the victim of discriminatory conduct.... The 180-day period is counted from the date the employee receives notice of termination"). In *Cocke*, the Court vacated and remanded the case to the District Court because the plaintiff was led to believe the employer was trying to place him in another job. This case is inapposite as in the facts before this court, the only allegation that the employer would find the plaintiff another position was from the plaintiff, who stated that was her belief, but had not been told by either defendant that they were so trying to place her. The plaintiff here was not "justified in waiting before resolving that suspicion into a fact." *Cocke*, 817 F.2d at 162.

8

Thus, counting 180 days backward from February 13, 1998, this court finds that any claims which arose before August 17, 1997 are barred. This court finds that because plaintiff had all the information necessary to determine that she would be terminated, and all the factual information she needed to determine whether she believed she was the victim of discrimination or retaliation by July 2, 1997, the court finds this case is due to be dismissed. The final decision to terminate the plaintiff, not the actual termination itself, constitutes the "alleged unlawful practice" that triggers the filing period for an EEOC charge under 42 USC § 2000e-5(e)(1). *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d. 431 (1980). Thus, the 180 day period is counted from the date the employee received notice of the termination, which was in May, 1997.[3]

Clearly, the plaintiff's original claim of retaliation, her May, 1996 transfer to solely Broadcasting duties, is not properly before this court. The plaintiff has alleged no grounds for this court to find that the plaintiff was unaware of her belief that this was a discriminatory action until after August 17, 1997, the furthest back in time from the date of the February, 1998 EEOC charge that this court will examine.

---

[3]The plaintiff alleges in her 10/25/99 affidavit that during the summer and fall of 1997, other employees were given the opportunity to interview for new positions with the company that had purchased Broadcasting. The plaintiff admits she was not offered an interview. She alleges that she believed this was because Kirkwood Balton, president of Broadcasting, had her in mind to work for the affiliated A.G. Gaston companies. Nowhere does plaintiff allege that any such representation was ever made to her by anybody in either of the defendants' employ. 10/25/99 affidavit of plaintiff at ¶ 4. Instead, she alleges that she was not told she was to be terminated. This is contradicted by testimony that all employees were told the company was sold and their employment to end. Depo. of Balton at 231-233.

The plaintiff's claim of discrimination in the failure to transfer back was also known to the plaintiff before August 17, 1997. When the plaintiff received her right to sue notice from the EEOC on July 2, 1997, she could determine whether she had been, or was going to be reinstated to her previous duties on that date. She had already been told that Broadcasting would be sold.

This court does not find that the failure to transfer the plaintiff back to her full duties was a new act of discrimination. An employer's refusal to undo a prior discriminatory act is not, in itself, a new act of discrimination. *Everett v. Cobb County School Dist.*, 138 F.3d 1407 (11th Cir.1998), citing *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir.1992). Rather, this court finds that even if it had been a fresh act of discrimination, it would still be time barred. Claims of discrimination accrue when the plaintiff is informed of the discriminatory act. *Everett*, 138 F.3d at 1410; citing *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (period commenced at time the ... decision was made and communicated to the plaintiff, even though one of the effects of [the decision], the eventual loss of [employment], did not occur until later).

The plaintiff's argument otherwise is based on *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990) (where court found that plaintiff's case was time barred). That case does not support plaintiff's argument that plaintiff had no basis to believe she was terminated until November 21, 1997, rather *Cada* states that "the denial of tenure was an adverse personnel action forbidden if done for discriminatory

10

reasons; it was irrelevant that the full consequences of the action were not felt till later." *Cada*, 920 F.2d at 449. In this case, the adverse personnel actions, under plaintiff's theory of discrimination, were the transfer to solely Broadcast duties and the failure to transfer back, in conjunction with the knowledge by defendants that Broadcast was to be sold and all employees terminated. Plaintiff alleges that both actions were in retaliation for her April, 1996 EEOC charge. Taking this as true, the plaintiff had all the information she needed to know she would be terminated in July, 1997, when she could have gone to court and sued her employer for discrimination. The 180-day limitations period to file a new EEOC charge began to run at that point, when the final allegedly discriminatory act, the failure to transfer back, occurred, not at the point the plaintiff felt the brunt of that act, in November, 1997. *See Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir. 1993) ("Title VII's period for filing a timely charge of discrimination with the EEOC 'did not begin to run ... until the facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff.'"); citing *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir.1975); *Fronduti v. Trinity Industries*, 928 F.Supp. 1107 (M.D.Ala. 1996).

The fact that plaintiff did not feel the "full consequences of the action" until November, 1997, is "irrelevant." *Cada*, 920 F.2d at 449. "The discriminatory act for the purposes of limitations is the notice to the employee of an adverse employment

decision, not the later execution of that decision." *Fronduti*, 928 F.Supp. at 1110, citing *Chardon v. Fernandez*, 454 U.S. 6, 8-9, 102 S.Ct. 498, 504-05, 66 L.Ed.2d 431 (1980). The court also questions the plaintiff's statement that the "defendant's attempt to rely on *Delaware State College v. Ricks*, 449 U.S. 250 (1980) is misplaced" as the case the plaintiff relies on, *Cada,* is based on *Ricks*.

The actual November, 1997 termination only confirmed what the plaintiff already knew, that Broadcasting was to be sold and that her position their would end. Plaintiff argues that she "did not believe, and had no reason to, that she would be terminated from the Broadcasting Service." Plaintiff's opposition to supplemental submission of Broadcasting at 9. However, the evidence in front of this court is that plaintiff believed as early as April 1996 that she was going to be terminated by Broadcasting. Her argument otherwise is in clear contradiction to this.[4] *See* plaintiff's EEOC charge 4/24/96; plaintiff's opposition to supplemental submission of Broadcasting at 11.

Furthermore, plaintiff's argument that "the defendant has submitted no evidence to show that it had decided to terminate Ms. Stewart prior to November 1997" is against the very evidence that plaintiff, in the same document but seven pages earlier, asked this court to strike. Plaintiff's opposition to supplemental

---

[4]While the plaintiff argues that a finder of fact could determine that Ms. Stewart maintained a reasonable belief at the time of her transfer that the transfer had been effected for a legitimate business purpose, and that this belief was reasonable at and after the date of the conclusion of the EEOC's investigation of her claim" this is against the plaintiff's very allegations in that EEOC charge. *See* plaintiff's opposition to supplemental submission of Broadcasting at 10.

submissions of Broadcasting at 2-3, 10. The fact that plaintiff chooses to now say that she did not believe that she was going to be terminated, even though she knew that Broadcasting was to be sold, she alleged the defendant was trying to terminated her in April, 1996, and knew she had been transferred to Broadcasting and not transferred back, flies in the face of credibility. Plaintiff offers nothing more than her belief that Broadcasting really did not intend to terminate her, even after all the employees were told they would be terminated.[5] In fact, plaintiff's argument is that she was one of the last employees to be let go. She states that "she was terminated several weeks after the majority of the Broadcasting Service's employees were terminated." Plaintiff's opposition to supplemental submission of Broadcasting, at 13.

The court's finding that the November 1997 termination was not a discrete discriminatory action is supported by the plaintiff's own complaint filed in this case, which states that "other employees in the broadcasting division who had not made complaints of discrimination or engaged in protected activity were rehired by the defendants." Complaint at ¶ 22. Clearly, the plaintiff is arguing that the failure to rehire, and not the termination itself, was a discriminatory act.

Nor does plaintiff's claim that Insurance's failure to "re-hire" her after she was terminated in November, 1997 by Broadcasting was discriminatory create a basis for

---

[5]Nor is this court willing to state that a company, selling its assets, or even a company selling off a division, must retain all the employees from that division and find them jobs or open itself up to as many discrimination charges as it had employees.

13

this court to not dismiss this case. A failure to rehire, subsequent to an allegedly discriminatory firing, absent a new act of discrimination in the refusal to hire, cannot resurrect the old discriminatory act. *Burnam*, 755 F.2d at 894, citing *Collins v. United Airlines, Inc.*, 514 F.2d 594, 596 (9th Cir.1975). While plaintiff argues her expectation that she would be rehired by Insurance or another of the related companies was reasonable, the evidence she uses to support this allegation does not support her argument. The plaintiff states "[Sandra] Jones was terminated from the Broadcasting Service originally on November 14, 1997, and then rehired **with the Broadcasting Service** on March 2, 1998 (emphasis in original)." Plaintiff's opposition to supplemental submission of Broadcasting at 6. However, March 2, 1998 is clearly after the plaintiff filed her EEOC charge on February 13, 1998 alleging that she was not rehired although other employees were. Similarly, plaintiff states the Barry Williams was hired as the Controller of Broadcasting, the plaintiff's past position.[6] Plaintiff's opposition to Insurance at 3. In fact, the plaintiff can only

---

[6] Apparently, Broadcasting continued to exist after its assets were sold. Plaintiff's opposition to Insurance at 3. See depo. of Balton at 67, stating that Broadcasting continues to exist for the "management of the property the tenant leases and runs." However, plaintiff's argument that Barry Williams being hired by Broadcasting is proof that she should not have been terminated or that she should have been "rehired" by Insurance is illogical because Williams was an employee of Insurance. *See e.g.* plaintiff's opposition to Insurance at 3. Plaintiff also states that this event was in "both" of her EEOC charges (assumably the February and June, 1998 charges), although the February 1998 charge was five months before the date Mr. Williams assumed these duties for Broadcasting.

give two examples of other Broadcasting employees who were hired by Insurance, those being Ms. Jones and Rose Walker.[7] *See also* depo. of Balton at 73.

The court finds the plaintiff's failure to rehire argument unconvincing. Even if this court considers Broadcasting and Insurance to be one and the same employer, the failure to rehire the plaintiff cannot, in itself, constitute a discriminatory act under the facts of this case. As explained in *Burnam*, if a failure to rehire was allowed to resurrect old claims, "a potential plaintiff could always circumvent the limitations by reapplying for employment. A simple request for reinstatement 'seeks to redress the original termination.'" *Burnam*, 755 F.2d at 894; citing *Collins*, 514 F.2d at 596. *See also Fronduti*, 928 F.Supp. at 1110.

The plaintiff knew when she received her right to sue notice in July, 1997, and had known for several months, that Broadcasting was to be sold. Even if her allegation that she was transferred to solely Broadcasting duties in retaliation for her April, 1996 claim was shown to be true, the plaintiff had knowledge of this no later than May, 1997. At that point, the plaintiff had all the information she needed to determine whether to file an EEOC charge. In fact, she had one charge that had just become ripe for adjudication in court. The plaintiff chose to do nothing until

---

[7]Although plaintiff does allege that she was discriminated against because of her sex in all three of her EEOC charges, even if this court reached the merits of the plaintiff's discrimination charges, the court notes that the one person retained, and the two rehired, were female.

February, 1998. This court can determine no basis to excuse the plaintiff from filing a timely EEOC charge.[8]

This court finds that it does not need to address plaintiff's argument that Broadcasting and Insurance were a joint employer for Title VII purposes because this court has found that, assuming that Insurance and Broadcasting were the same employer, the February, 1998 filing was untimely.

## CONCLUSION

This court having considered all of the evidence, memoranda, briefs and arguments of the parties and the court finding that the defendant's motions to dismiss (docs. 3, 5 and 12) are due to be granted;

It is therefore **ORDERED** by the court that said motions be and hereby are **GRANTED** and this case is **DISMISSED WITH PREJUDICE** against both of the defendants.

**DONE** and **ORDERED** this the 29 day of October, 1999.

_____
UNITED STATES DISTRICT JUDGE
INGE P. JOHNSON

---

[8] Of further concern to this court is that the grounds plaintiff alleges as discriminatory regarding these acts of Broadcasting is that they were in retaliation for, her April, 1996 EEOC charge, as well as constituting sex discrimination. Plaintiff could have pursued her April, 1996 EEOC charge when she received her right to sue notice from the EEOC on July 2, 1997. The plaintiff having failed to do so, the court is not going to allow her to know revive that action by additional, untimely filed EEOC charges.